UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

JAZZ REINSURANCE COMPANY,

                    Plaintiff,

       - against -

ANTONY MITCHELL,

                  Defendant.

———————————————————————————

25-cv-1922 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Jazz Reinsurance Co. ("Jazz"), brings this breach-of-contract action against Antony Mitchell ("Mitchell"). According to Jazz, Mitchell has failed to meet his payment obligations under a loan guaranty. Compl. ¶ 1, ECF No. 1. Jazz seeks compensatory damages, pre- and post-judgment interest, and an award of fees, costs, and expenses. Id. at 22. Mitchell moves to dismiss the complaint or, alternatively, to stay the proceedings. ECF No. 24. Mitchell does not specify under which rule he brings his motion, but because he argues in substance that the complaint fails to state a claim, his motion is appropriately considered under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Mitchell's motion is **denied.**

I.

Unless otherwise noted, the following facts are taken from the complaint and are accepted as true for purposes of the current motion.

Jazz is a reinsurance company incorporated in Utah, with its principal place of business in Salt Lake City, Utah. Compl. ¶ 10. Mitchell, who is domiciled in Florida, is the managing member of Appaloosa Finance LLC, a Florida limited liability company, and the sole member and manager of St. James II LLC ("St. James"). Id. ¶ 11. There is federal jurisdiction over this action based on diversity of citizenship between Jazz and Mitchell. See 28 U.S.C. § 1332.

Jazz, along with two other lenders — Southern Atlantic Re, Inc. ("Southern Atlantic") and Haymarket Insurance Company ("Haymarket") — loaned approximately $34 million to St. James. Id. ¶¶ 2, 11, 18. Jazz, Southern Atlantic, and Haymarket are referred to collectively as the "Lenders." The parties memorialized the loan terms in two contracts (together, the "Agreements"). Id. ¶¶ 3, 18; Exs. B, C, ECF Nos. 1-2, 1-3. The "Credit Agreement" provided the terms under which the Lenders would extend the loan to St. James. Compl. ¶ 3. The "Security Agreement" provided that St. James would grant Jazz, as the agent for the Lenders, a security interest in a bundle of 147 structured settlement receivables, which the parties called the "Collateral." Id.

The parties also executed the "Guaranty," which provided that Mitchell "irrevocably and unconditionally" agreed, as the primary obligor, to pay certain "obligations" when they became

2

due.[1] Compl. ¶¶ 27-29. Specifically, Mitchell agreed to compensate the Lenders for any loss, damage, or expenses they incurred in connection with certain events defined under the Guaranty as "Guaranteed Obligations." Id. ¶ 4. Mitchell allegedly executed the Guaranty for the purpose of inducing the Lenders to grant the loan to St. James. Id. ¶ 2; Ex. A at 1.

According to Jazz, St. James materially breached the Agreements by failing to provide the Lenders with monetary proceeds from the Collateral and by failing to deposit the Collateral proceeds into certain contractually designated bank accounts. Compl. ¶¶ 6, 37. Jazz also alleges that Mitchell had already pledged the Collateral to other parties before St. James executed the Agreements in this case. Id. ¶ 7. Jazz twice demanded that Mitchell pay the amounts due under the Guaranty — first on January 22, 2025, and then again on February 28, 2025 — but Mitchell failed to make the required payments. Id. ¶¶ 8, 42.

Jazz contends that it has suffered over $40 million in losses as a result of Mitchell's conduct. Id. ¶ 9. It brings this breach-of-contract action to recover its alleged losses. Mitchell now moves to dismiss or, alternatively, to stay this

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

action pending the resolution of <u>Leadenhall Capital Partners LLP v. Wander</u>, No. 24-cv-03453 (S.D.N.Y.).

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Iqbal</u>, 556 U.S. at 678.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or

4

matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

Both parties agree that New York law applies in this case. See Compl. ¶ 3; Def.'s Mot. to Dismiss, or in the Alternative, Mot. to Stay ("Def.'s Mot.") 3, ECF No. 24. "Under New York choice of law rules, where both parties agree as to the applicable law, that agreement is sufficient to establish choice of law." Excelsior Cap. LLC v. Allen, No. 11-cv-7373, 2012 WL 4471262, at *9 (S.D.N.Y. Sep. 26, 2012), aff'd, 536 F. App'x 58 (2d Cir. 2013) (summary order). The Court therefore "follow[s] their lead." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

### III.

### A.

Mitchell argues initially that the Guaranty is void under the statute of frauds because the Guaranty does not sufficiently identify the parties. Def.'s Mot. 14. Specifically, Mitchell, pointing to the Guaranty's reference to unspecified "certain lenders," contends that the Guaranty is ambiguous as to which lenders are covered. Id. at 15.

Under New York Law, an "agreement, promise or undertaking" must be in writing if it is a "special promise to answer for the debt, default or miscarriage of another person." N.Y. Gen. Oblig. Law § 5-701. The Guaranty falls within the statute of

frauds because it makes Mitchell liable, as a "primary obligor," for the "payment and performance of the Guaranteed Obligations." Compl., Ex. A § 1.1.

To satisfy the statute of frauds, a contract must "identify the parties." Eminah Properties LLC v. Energizer Holdings, Inc., 531 F. Supp. 3d 593, 602 (E.D.N.Y. 2021). Mitchell argues that the Guaranty fails to identify unambiguously the parties to the agreement. Def.'s Mot. 14. But this argument is unpersuasive because the Guaranty identifies the parties on its face. It expressly names Mitchell as the "Guarantor," and it defines the "Lenders" by reference to the Credit Agreement. Compl., Ex. A at 1. The Credit Agreement defines the Lenders as Jazz, Southern Atlantic, and Haymarket.

The specific clause that Mitchell challenges — that the Guaranty was executed in favor of Jazz as an agent "for the benefit of certain lenders," id. — does not say what he claims. The phrase "certain lenders" is not ambiguous because Jazz is plainly described in the Guaranty as the agent for the three specific lenders defined in the Credit Agreement, namely Jazz, Southern Atlantic, and Haymarket.

The contracting parties are unambiguously Mitchell as the Guarantor and Jazz as the agent for the Lenders. The Guaranty therefore satisfies the statute of frauds.

**B.**

Mitchell next claims that the Guaranty lacks consideration because the loan was made available before the parties executed the Guaranty. Compl. at 5. However, "[New York] General Obligations Law § 5-1105 makes an exception where the past consideration is explicitly recited in a writing." Korff v. Corbett, 65 N.Y.S.3d 498, 502 (App. Div. 2017). "To qualify for the exception, the description of the consideration must not be vague or imprecise, nor may extrinsic evidence be employed to assist in understanding the consideration." Id.

In this case, the consideration for the Guaranty is clear on the face of the contract. Mitchell entered into the Guaranty in exchange for the Lenders' extension of the loan to St. James. Compl., Ex. A at 1. And as Mitchell acknowledges, "[a]n extension of credit is ample consideration for the execution of a guaranty." Def.'s Mot. 5 (quoting Movado Grp. v. Presberg, 687 N.Y.S.2d 116, 116 (App. Div. 1999)). The consideration is clearly and precisely stated — the approximately $34 million loan — and no extrinsic evidence is necessary to understand the consideration.

**C.**

Mitchell next raises several defenses predicated on a purported indemnification agreement that he entered into with St. James's ultimate parent corporation, 777 Partners LLC. Def.'s

7

Mot. 1. According to Mitchell, Jazz's "corporate affiliate," Advantage Capital Partners LLC ("A-CAP"), is truly interested in recovering from 777 Partners, but cannot do so without violating this Court's injunction in Leadenhall Capital Partners LLP v. Wander, No. 24-cv-3453 (S.D.N.Y. May 1, 2025), ECF No. 283. Id. To get around the injunction, A-CAP has instructed Jazz to sue Mitchell, rather than 777 Partners. Id.

None of these allegations are in the complaint. Mitchell argues for the first time in his motion to dismiss that the indemnity agreement is part of a single contract governing the parties' relationship regarding the loan, and therefore the indemnity agreement is integral to the complaint. Def.'s Mot. 7. Based on the indemnity agreement, Mitchell argues that the Guaranty is rescindable for lack of consideration and is unenforceable because its performance is objectively impossible and its purpose was frustrated. Def.'s Mot. 9.

When considering a Rule 12(b)(6) motion, district courts may not "look beyond facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). In a narrow set of cases, however, courts may consider a document not expressly incorporated in a complaint if it is "integral" to the complaint. Id. "A document is integral to

the complaint where the complaint relies heavily upon its terms and effect." Id. In most cases in which a document is "integral," the document is "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." Id. Mere mention of the document and even "limited quotations" of the document in the complaint is insufficient. Id.

The complaint in this case does not even mention the existence of the indemnity agreement, let alone rely on any of its terms. Because the indemnity agreement is not part of the contracts at issue in the complaint and is not otherwise integral to the complaint, judicial notice of the indemnity agreement is inappropriate at this stage. Thus, all of Mitchell's arguments that rely on the indemnity agreement fail to support Mitchell's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### D.

Finally, Mitchell requests in the alternative a stay of all proceedings pending the outcome of Leadenhall Capital Partners LLP v. Wander, No. 24-cv-03453 (S.D.N.Y. argued Oct. 2, 2024). Mitchell contends that in Leadenhall, Jazz's corporate affiliate A-CAP is being sued for fraud. Def.'s Mot. 1-2. As explained above, Mitchell claims that A-CAP is using Jazz in this action to strip A-CAP's alleged co-conspirator, 777 Partners, of the

latter's assets in violation of this Court's injunction. Id. at 1. According to Mitchell, if the allegations in Leadenhall are proven true, then there is no recourse "available to A-CAP and its affiliates" and Jazz would lose this case. Id. at 18.

A movant seeking a discretionary stay bears a "heavy" burden. Radio Music License Comm. v. Am. Soc'y of Composers, Authors and Publishers, 684 F. Supp. 3d 165, 170 (S.D.N.Y. 2023). In determining whether to issue a stay, district courts consider the following factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Rankine v. Levi Strauss & Co., 674 F. Supp. 3d 57, 68 (S.D.N.Y. 2023).

In this case, Jazz has a significant interest in proceeding expeditiously to recover the more than $40 million it alleges Mitchell owes under the Guaranty. See Compl. ¶ 8. Mitchell, on the other hand, alleges that he would be subject to duplicative and costly discovery absent a stay in this case. Def.'s Mot. 17. But Mitchell has made no showing that the outcome in Leadenhall would resolve this case. Because Mitchell fails to explain how the outcome of Leadenhall would resolve this case, he cannot

10

show that a stay would promote efficiency or conserve judicial resources. Finally, this case concerns a contractual dispute between two private parties with no clear implications for non-parties and the public interest. Thus, the fourth and fifth factors do not favor a stay. Mitchell's motion for a stay is therefore **denied.**

**IV.**

The Court has considered all of the parties' arguments. To the extent not addressed specifically, those arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss and to stay is **denied.**

The Clerk is instructed to close ECF Nos. 24 and 30.[2]

**SO ORDERED.**
**Dated:** **New York, New York**
**March 10, 2026**

_____
John G. Koeltl
**United States District Judge**

---

[2] This is not a motion for which oral argument is needed.